E-filing

FILED

MAY 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

John Hsu )
)
　　　　　　　　　Plaintiff, )
)
　vs. )
)
California Department of )
Toxic Substances Control )
("DTSC") and )
Jeffrey Wong ("JW")Defendant(s). )
in his personal capacity )
)

C08-02586 MHP

CASE NO. _____

**EMPLOYMENT DISCRIMINATION COMPLAINT**

1.　Plaintiff resides at:

Address _____ P. O. Box 1255 _____

City, State & Zip Code ___ Berkeley, CA 94701 _____

Phone _____ (510) 841-5992 _____

2.　Defendant is located at:

Address _____ 1001 "I" Street _____

City, State & Zip Code ___ Sacramento, CA 95814 ____

3.　This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employ-
ment discrimination. *vs. DTSC* Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000e-5.

Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).　This action
also involves *DTSC's* breach of contract and *JW's* deprivation of First

4.　The acts complained of in this suit concern:　Amendment right (42 U.S.C
section 1983).

a. _X_ Failure to employ me.

b. _X_ Termination of my employment.

Form-Intake 2 (Rev. 4/05)　　　　　　- 1 -

1   c. <u>x</u> Failure to promote me.

2   d. <u>X</u> Other acts as specified below.

3     (Please see the Attachment.)

4 _____

5 _____

6 _____

7 _____

8 _____

9 5. Defendant's conduct is discriminatory with respect to the following:

10   a. __ My race or color.

11   b. __ My religion.

12   c. __ My sex.

13   d. __ My national origin.

14   e. <u>X</u> Other as specified below.

15     My prior participation in protected activities.

16 6. The basic facts surrounding my claim of discrimination are:

17    (Please see the Attachment.)

18 _____

19 _____

20 _____

21 _____

22 _____

23 _____

24 _____

25 7. The alleged discrimination occurred on or about  1990-2008  .

26          (DATE)

27 8. I filed charges with the Federal Equal Employment Opportunity Commission (or the

28 California Department of Fair Employment and Housing) regarding defendant's alleged

  Form-Intake 2 (Rev. 4/05)   - 2 -

1    discriminatory conduct on or about _____ 10/27/00, 8/3/01, 8/20/01, 10/22/02,
2                                        6/30/05, 2/28/06, 1/23/07, 9/2/07
                                              (DATE)

3    9.    The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter

4    (copy attached), which was received by me on or about _____ 2/27/08 _____.

5                                              (DATE)

6    10.   Plaintiff hereby demands a jury for all claims for which a jury is permitted:

7          Yes __X__    No _____

8    11.   WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,

9    including injunctive orders, damages, costs, and attorney fees.

10

11   DATED: __5/21/08__                    _____

12                                              SIGNATURE OF PLAINTIFF

13

14   *(PLEASE NOTE: NOTARIZATION*              JOHN  HSU

15   *IS NOT REQUIRED.)*                   _____

                                           PLAINTIFF'S NAME

16                                         (Printed or Typed)

17

18

19   12.   Request for leave to append additional EEOC Right-to-

20         Sue letters (expected later in 2008).

21

22

23

24

25

26

27

28

     Form-Intake 2 (Rev. 4/05)              - 3 -

**Employment Discrimination Complaint**

**ATTACHMENTS**

4.     The acts complained of in this suit concern:

    a.     Failure to employ me.

    b.     Termination of my employment.

    c.     Failure to promote me.

    d.     Maintenance of an abusive, oppressive, intimidating, harassing, and hostile work environment, so severe and pervasive as to substantially, materially and adversely alter the terms, conditions and privileges of my employment.

    e.     Retaliation for my participation in protected activities (for reporting scientific misconduct, employment discrimination, harassment, retaliation, other improper governmental activities, and work-related injuries, and for speaking on matters of public concern).

    f.     Continuing violation.

    g.     Breach of prior (8/25/03 & 9/03) settlement agreements reached in federal and state courts, including breach of the express and implied covenant of good faith and fair dealing.

    h.     Re-assignment with significant different and lower responsibilities (to perform primarily entry-level work assignments).

    i.     Disparate treatment (in provision of training and in non-uniform application of performance standards)

    j.     Denial of job-required training.

    k.     Denial of professional training opportunities (e.g., attendance at the American Chemical Society National Meetings).

1

l.   Imposition of "Individual Development Plans" ("IDPs") which are in fact "Individual DIMINISHMENT Plans."

m.   Heightened scrutiny; excessive and unfair criticisms.

n.   Engagement in employment practices with a significantly disproportionate adverse impact on me.

o.   Denial of requests for lateral transfer.

p.   Undeserved negative performance evaluation.

q.   Negative job references.

r.   Violation of my U. S. Constitutional First Amendment right (protected by 42 U.S.C. § 1983) to speak on the job or in my private personal capacity on matters of public concern:

(1) whether the federal and state regulatory leaching tests, Toxicity Characteristic Leaching Procedure ("TCLP") and California Waste Extraction Test ("TCLP"), used to evaluate whether a solid waste qualifies as hazardous waste, are sufficiently protective of human health and the environment; and

(2) whether the scientific basis underlying the TCLP and WET was adequate to meet the criterion of general acceptance by the scientific community, as stated by the U. S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579.

2

6.    The basic facts surrounding my claim of discrimination are:

    a.    I am an Asian and I hold a Ph.D. in Chemistry from a top-ten Chemistry Departments in the nation. I have published research papers in leading scientific journals.

    b.    I began working for the State of California in 1979 in the California Department of Health Services ("DHS").

    c.    From the 1970's to the 1990's for about 20 years, DHS' Hazardous Materials Laboratory ("HML") had not ever promoted any non-Caucasian to the scientific lead position of Environmental Biochemist.

    d.    In 1990 while working in HML, I participated, pursuant to DHS' Policy on Scientific Misconduct, in the protected activity of filing a complaint about my then supervisor's scientific misconduct.

    e.    Right after I filed this complaint, my then supervisor began issuing me lengthy memos of false documentation and assigning me work that could not be completed using the designated technology. Relying on the six-months' worth of such false documentation, DHS imposed on me a 31-calendar-day suspension in 1991.

    f.    For 17 years since I complained about scientific misconduct, HML, DHS & the California Department of Toxic Substances Control ("DTSC") (to which HML had moved administratively in 1993) have never promoted me. In the 1990's, for example, HML repeatedly refused to appoint me to the position of "Environmental Biochemist." Instead, HML promoted candidates less qualified than I was.

    g.    On 2/5/92 (–letter attached), through its independent investigation, the U. S. Environmental Protection Agency confirmed the validity of my concern about scientific misconduct in 2000 at HML.

    h.    In or about 1990, an employee union filed a class-action overtime lawsuit in the federal court. About eight years later in 1998, DHS finally agreed to settle my

3

portion of the suit, but then immediately showered me with various serious charges, such as making of a bomb threat. HML then supported DHS.

i.  In 1999, DHS further accused me of "criminal trespassing," but refused to produce the building lobby's surveillance cameras' videotapes which would have exonerated me. To DHS' demand to restrict my building access, HML yielded and cooperated. During the time periods I was denied building access, my computer files related to the "criminal trespassing" incident disappeared from my office. Afterwards, HML issued me warning memos forbidding me to contact DHS or the California Highway Patrol (about the loss of computer files and the security breach). In 2005 to 2007, DTSC used these memos from HML as evidence to support DTSC's adverse actions against me.

j.  In 2000, based on HML/DTSC's false documentation in 1999, etc., HML Chief Bart Simmons issued me an undeserved negative perform report, forcing me to appeal the performance report to the California Department of Personnel Administration ("DPA") and to file a Charge of Discrimination with the U. S. EEOC, and subsequently with the federal and state courts.

k.  On 8/25/03 in federal court, DTSC and I agreed to settle (the employment discrimination action, Case No. C 01-4216 MHP) to put all past litigations aside. In accordance with the settlement agreement, copy attached, Thomas Li ("TL") would be my new supervisor, and DTSC and I would be required to support or pursue, in good faith, the development plan as outlined in the "Court's Exhibit A." The state court litigants not present at the settlement conference, including DHS and DPA, were then folded into the global settlement through several "Stipulated Dismissals" in 9/03 fully incorporating the terms of the 8/25/03 settlement.

l.  Just two days after reaching the settlement agreement on 8/25/03, however, DTSC attempted to undermine the settlement agreement by intending to issue a new IDP to take the place of the "Court's Exhibit A" in the 8/25/03 settlement agreement.

m.  On 10/8/03, within a month of DPA's 9/17/03 entry into the global settlement,

4

DPA still issued a final decision on the merits in an already settled case (DPA Case No. 03-H-0016, *Hsu v. DTSC*), forcing me to enter into litigation again (Alameda County Superior Court Case No. RG03125579). As the Real Party in Interest in that action, DTSC fully supported DPA's 10/8/03 issuance of DPA's final decision. The case subsequently went to the California Court of Appeal which ruled for me and against DPA and DTSC (Case No. A105943).

n.  In 2003, the Science Advisory Board of the U. S. Environmental Protection Agency conducted a consultation on "leaching phenomenon." HML Chief Bart Simmons then assigned me to follow up on the developments related to leaching –for testing and determining whether a "solid waste" should be classified as a "hazardous waste." By analyzing from first principles, with the work done much on my own time, I developed an important research paper entitled "Regulatory Testing of Waste Leaching" ("first paper"), examining the scientific basis of the federal and state leaching tests.

o.  In 2004, to HML staff's bewilderment, Laboratory Chief Barton Simmons retired at age 54.

p.  In 2004, while continuing on with the work on leaching phenomenon, I developed another research paper "TCLP and WET as Applied to Elemental Mercury" ("second paper"), which was related to the mercury pollution of global concern. When DTSC Deputy Director Jeffrey Wong ("JW") reviewed the paper (prepared on my own time rather than state time), JW asked that certain supporting data be included in the paper. I then searched the archives for the data, but JW became upset and in 12/04 accused me of using state time and resources to work on a "private matter" for "private gain."

q.  On or about 1/19/05, TL informed me that JW had asked TL to prepare a "Statement of Facts" about me, and that JW had wanted TL to "do dirty work" on me. Privately, TL further explained to me that he had to do what the higher management had directed him to do.

r.  On 1/26/05, JW reassigned me to work under Jarnail Garcha ("JG"), a person

5

known to me to be dishonest and unethical, whom I had specifically rejected as my supervisor during the 8/25/03 settlement conference.

s.   In 3/05, DTSC denied my training request to attend the American Chemical Society National Meeting and present the second paper on leaching. I thus had to pay my own way to attend the very important professional meeting.

t.   On 3/21/05, following the "Statement of Facts" JW directed TL to prepare, TL issued to me a highly critical memo, consisting of elaborately misleading factual characterizations. DTSC subsequently argued from this memo in a DPA hearing (DPA Case No. 05-H-0026, *Hsu v. DTSC*), and used this memo in support of DTSC's 2005-2007 adverse actions against me.

u.   On 3/23/05 and 4/7/05, JG issued me warning memos containing various false statements, unjustly accusing me of various "wrongs" (for arranging a seminar on solid waste management after getting verbal approval from JG and TL, and for not following an outdated policy unknown to me about time reporting). These memos also ended as documents in support of DTSC's 2005-2007 adverse actions against me.

v.   On or about 4/12/05 when discussing the need to adhere to the federal court's 9/22/03 Order approving of the 8/25/03 settlement agreement, JG said to me that he did not care about court order.

w.   On 4/20/05, DTSC Legal Counsel Joan Markoff, who represented DTSC at the 8/25/03 settlement conference, declared that my future job duties would be limited by the scope of DTSC's IDP for me, to be drafted by JG in 2 days. That is, DTSC unilaterally decided to use the new IDP to take the place of the "Court's Exhibit A" of 8/25/03.

x.   On 4/22/05 and 5/3/05, JG issued me an IDP which was in effect an "Individual **Diminishment** Plan" –by comparison with the 8/25/03 "Court's Exhibit A."

y.   On 5/20/05, JW announced the appointment of Bruce La Belle ("BLB") as HML's new Lab Chief.

z.   On 5/24/05, BLB supported JG in assigning me to do routine chemical analysis.

6

Such work assignment was a significant departure from the work I did under Bart Simmons as scientific/technical consultant to the Laboratory Chief.

aa.    Since BLB joined HML on 5/23/05, BLB and JG have been working closely to torment and harass me, such as by creating elaborate false documentation, by excessive unfair criticism, by declaring deadlines only after the alleged deadlines had passed, and by demanding work completion without the needed training (on x-ray fluorescence spectroscopy, and on ion chromatograph software, hardware, maintenance and troubleshooting).

bb.    In 6/05 HML conducted job interviews for a Research Scientist II (Chemical Sciences) position. On 6/1/05 when I interviewed in Sacramento, the five panelists hardly took any notes. On 6/2/05, panel chair BLB traveled down to Berkeley to discuss the topics covered in the interview with Staff Chemist Orlando Garbin. On 6/3/05, Orlando Garbin went to Sacramento for his interview. From the interviews, BLB rejected me (in top rank) in favor of Orlando Garbin who was not even on the eligibility list.

cc.    On 6/2/05, JG treated me so rudely that on Friday, 6/3/05, I requested an immediate change in reporting relationship. On Monday, 6/6/05 at about 12:50 PM, BLB wanted to talk to me in his office while he was eating lunch, even though I had not had lunch yet. The meeting lasted till 2:10 PM. At that time I was really tired. Shortly afterwards, I returned to my office for a brief rest, but JG walked in to accuse me of having said things which I had not said, and to pick a fight. On 6/20/05, JW then relied on JG's false documentation of this event as a ground to impose on me a 10-working-day suspension for failure to complete work assignments, etc. Included in support were TL's 3/21/05 memo and JG's 3/23/05 and 4/7/05 "counseling" memos.

dd.    In 8/05, JG assigned me to do a lengthy and tedious entry-level cyanide analysis not performed in the lab for several years. JG asked me to report any problem I encountered. After I reported to JG the missing Inlet Tube which the lab chemists could not locate, etc., JG again ridiculed me by announcing that I needed a "very

7

basic training" about the laboratory procedures. On the ground of this "basic need" JG identified, JG denied my request for another professional training (–the California Environmental Protection Agency's Environmental Inspector's training).

ee.   On 10/3/05 I sustained on-the-job injury while working on the cyanide assignment. However, DTSC did not promptly refer me to Kaiser Occupational Health Department for examination and treatment. On 11/30/05, sensing that DTSC would not do a thing for me about the injury, Kaiser started the paperwork for me to file my first Workers' Compensation claim.

ff.   In 10/05, BLB denied my request for lateral transfer to a different group in HML, thus forcing me to continue to work in the hostile work environment under JG.

gg.   On 11/22/05, JG issued me an undeserved negative performance report after BLB's review, editing and approval of the report. The performance report included a new IDP which was a further downgrade from the 5/3/05 IDP and a further departure from the 8/25/03 "Court's Exhibit A." On 11/24/05, pursuant to the California Government Code section 19992.2, I requested a meeting with the appointing power to discuss the performance report. On 12/2/05, on behalf of the appointing power, BLB stated that he found "no basis" to revise JG's 11/22/05 performance report. BLB's express concern was my "inability to get my work done."

hh.   In 12/05, JW testified at DPA, maintaining that the second paper I prepared on leaching phenomenon, derived from the former HML Chief Bart Simmons' work assignment, was not a work assignment, and thus I was using state time and resources to work on a private matter for private gain.

ii.   In light of my "inability to get my work done," on 1/3/06 JW issued me another Notice of Adverse Action suspending me for 20 working days.

jj.   Early in 2006, HML was renamed the "Environmental Chemistry Laboratory" ("ECL").

kk.   In 6/06, ECL conducted several job interviews for Research Scientist II and III

8

positions. In each case, ECL de-selected me. Instead, BLB/DTSC promoted JG
to Research Scientist III, even though JG lacked suitable research experience and
was uncomfortable with scientific ideas. After being promoted to Research
Scientist III, JG continued to do primarily his former Supervising Chemist job
–making work assignments to the chemists in the Inorganic Section of ECL.

ll.     In 6/06, I was assigned to analyze a large number (56) of samples for fluoride. On
6/9/06, three days after sample arrival, I showed JG my preliminary screening
results and asked JG about the expected turnaround time, but JG did not state a
deadline. Subsequently, JG claimed that I had not given him any report until more
than two weeks after sample receipt and that I was late. JG further failed to
explain why the tight deadline he gave after the fact was reasonable.

mm.    In 6/06, claiming that I had failed to troubleshoot the ion chromatograph, JG and
BLB gave me specific "troubleshooting" assignments which merely consumed my
time and the state's resources but could not fix any existing problem.

nn.    In 7/06, I was told that because of the difficulty I had with JG, TL had offered to
be my supervisor again, but BLB rejected the request.

oo.    In 7/06, I participated in the protected activity of reporting to the Bureau of State
Audit and the State Personnel Board about DTSC's improper governmental
activities including misrepresentation of facts, hunting for blame, and other
unlawful employment practices.

pp.    Toward the end of 7/06, ECL received another large analytical request, this time
for the determination of Cr(VI) in 44 soil samples. BLB and JG assigned the
work to me. Because the work was too much for one person to complete within
the samples' 30-day holding time (–30 days from the time of sample collection on
7/25/06), JG agreed to have another chemist assist me in sample preparation
(–alkaline digestion of the soil samples). Soon after the samples arrived on
8/11/06, however, JG withdrew the assistance offered. On 8/17/06 at about 3:45
PM, JG gave instruction as to how to proceed with the analysis (– not to repeat the
alkaline digestion; just do more quality assurance runs). After I proceeded in the

9

manner as JG instructed, however, JG not only denied having given such instruction, but reported to DTSC Human Resources and Office of Legal Counsel that I had twisted the facts. BLB and JG then insisted that I should have proceeded in some other way which actually could not get done within the samples' 30-day holding time.

qq.    In 9/06, BLB again denied my request to attend the American Chemical Society National Meeting, even though BLB had encouraged all ECL chemists to attend the Meeting.

rr.    In 2006, while I had heavy work loads, BLB continued on with his e-mail attacks and demanded immediate responses even though he knew that I was busy with my primary job function of performing laboratory sample analysis.

ss.    About JG and BLB's continuing harassment, I sought assistance from DTSC Human Resources. Human Resources directed me to BLB's supervisor JW. JW stated, however, that he was "satisfied" with the direction in which the ECL was going.

tt.    BLB and JG continued to work in concert against me. JG and BLB further took ideas from the Cr(VI) method development work I did as their ideas and their "work assignments" for me, demanding my completion of such work which I had already done. In 2007, DTSC then used its alleged failure to complete work assignments as a ground to impose on me the adverse action of termination.

uu.    In 12/06, BLB again bypassed me for promotion to Research Scientist II and again denied my request for lateral transfer, even though I was in top rank and had considerably more relevant experience than the candidates BLB eventually selected.

vv.    In 2006, DTSC, the Department of Health Services, and OEEHA held other interviews for job vacancies. While the panels were impressed by my performance at the job interviews, none of them offered me a position after conducting reference check with ECL or DTSC.

ww.    On 2/21/07, JW issued to me the Notice of Adverse Action dismissing me from

10

civil service, attaching false documentation from the years past in support. On 2/22/07 after DTSC served the Notice on me, DTSC had a California Highway Patrol Officer escort me out of the building within ten minutes. DTSC further notified the building security to forbid me future entry into the facility. In an ECL all-staff meeting, BLB told ECL staff "not to be afraid." Subsequently, DTSC Human Resources asked the State Personnel Board to remove my name from several employment eligibility lists.

xx.    In 2006-2008 in administrative hearings at the Office of Administrative and the State Personnel Board, JG and BLB both gave false and misleading testimony extensively while under oath to tell nothing but the truth.

yy.    On 4/22/08, in light of DTSC's failure of proof, the State Personnel Board, which heard my appeals of the 6/20/05 and 1/3/06 adverse actions, dismissed DTSC's charges that I had not timely, efficiently completed my work assignments in 2005.

zz.    In numerous discrimination complaints filed with DTSC's Office of Civil Rights ("OCR"), the OCR either did not respond or ruled in favor of the management by taking statements made by the supervisors and managers as true.

For more details, please see also the "Statements of Particulars" in the attached U. S. EEOC Charges of Discrimination, which are fully incorporated herein by reference.

11

Complaint about Scientific Misconduct



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
OFFICE OF RESEARCH AND DEVELOPMENT
ENVIRONMENTAL MONITORING SYSTEMS LABORATORY-LAS VEGAS
P.O. BOX 93478
LAS VEGAS, NEVADA 89193-3478
(702/798-2100 - FTS 545-2100)

FEB -5 1992

Dr. Michael G. Volz, Chief
Division of Laboratories
Department of Health Services
2151 Berkeley Way
Berkeley, CA 94704-1011

Dear Dr. Volz:

    Thank you for the information included in your letter of
December 19, 1991.  We were able to access both data files
including the file ROS75, which your laboratory was unable to
read.  We are returning these tapes with this letter.  Also
enclosed are chromatograms and spectra (Figures 1-8 ) from these
files that pertain to this matter.

    We were not able to duplicate any of the mass spectra in
Figure 3 of the Sixth Annual Waste Testing and Quality Assurance
Symposium paper except the spectrum for benzenesulfonic acid.
Even the spectrum that we retrieved for this compound had been
severely truncated in the symposium paper.  The base peak (m/z
77) and second most intense peak (m/z 94) had been omitted; see
Figure 1 of the enclosed data.  The mass spectra for the three
other sulfonic acids do not appear at all comparable with the
spectra in Figure 3 from the Symposium.  See Figures 2 and 3 of
the enclosures.  These are background subtraction spectra from
the raw data on file FE213 which is apparently the file acquired
with the membrane suppressor.  The discrepancy lies with the
interferant or artifact ion at m/z 79 and other associated ions.
This ion dominates the spectra and, as can be seen in Figure 4 of
the enclosures, coelutes with each peak on the reconstructed ion
chromatogram except the benzenesulfonic acid.  Consequently,
simple background subtraction will not clean up these spectra.
However, if one were to eliminate m/z 79 and other artifact ions
by the "PT" command on the Hewlett-Packard software, one might be
able to generate the spectra in Figure 3 from the Symposium,
since the major ions appearing in this figure are also present in
the original data but at much lower intensities.

    We have concluded that Dr. Hsu's concerns about the quality
of science were valid.  His major point was that mass spectra he
acquired  with the membrane suppressor differed from those
presented at both the Pittsburgh Conference and the EPA
Symposium.  He suspected that either (1) data from different
files were composited, or (2) the data were from the original

file and were somehow transformed. This also has to be our conclusion. The second possibility, in particular, may be a realistic possibility for reasons discussed at the end of the previous paragraph.

In contrast to the puzzling spectra from File FE213, the spectra from file ROS75 (Figures 5-8) are much better representations of the Figure 3 Symposium spectra. These spectra are not encumbered by the interferant or artifact ion at m/z 79. These spectra, however, were acquired after the Symposium and were apparently taken without the membrane suppressor.

Our major concern rests with deficiencies in the quality of science from your laboratory and the apparent disregard of good laboratory practices and record keeping. Our concern arises from at least five points that we have been able to document.

1. The unjustified use and inexplicable composition of greatly truncated spectra.
2. Spectra prepared for publication that cannot be reproduced from the raw data tapes.
3. Failure to keep a "paper trail"; no one knew under which conditions certain spectra were acquired.
4. Wrong retention times. Comparing Figure 2 of the Symposium paper with Figure 4 of the enclosures shows that for the same data the retention time has changed by nine minutes.

You mentioned in your letter that the Hazardous Materials Laboratory had a well developed QA/QC program in place. We hope in the future this program is applied to projects such as the one under this cooperative agreement. We found evidence that the QA/QC program used by the LC/MS group was not being followed, at least on matters of background subtraction. It would also be prudent to separate the duties of QA officer and principal investigator. This would provide additional oversight to the project.

Thank you for your cooperation during these investigations. With respect to matters relevant to the quality of science, we now consider this inquiry closed.

Sincerely yours,

J. Gareth Pearson
Acting Director

Enclosures

cc: John Hsu
Iris Zeigler, Grants Operations Branch
John Sweeney, Office of the Inspector General



Figure 1



Figure 2



Peak 4

Figure 3

Figure 4



Figure 5



Figure 6



Figure 7



Figure 8

## 31-DAY SUSPENSION

This <u>31-DAY SUSPENSION</u>, from October to November 1991, was a **RETALIATION** against my complaint about **Scientific Misconduct** submitted on December 7, 1990 to Harvey E. Collins, Ph.D., Deputy Director, Public Health, Department of Health Services (DHS).

From late 1989 to early 1990, on a very tight time schedule, I worked very hard to develop, and work out, an experimental method interfacing high performance liquid chromatograph with particle beam mass spectrometer through the use of a membrane suppressor. I was the first person in this world to accomplish this task. When presenting the findings at the Pittsburgh Conference early in 1990, however, my supervisor Mark Brown **substituted my mass spectra** with somebody else's.    This was very unprofessional.    This was scientific misconduct.    I had not done all this hard work for the sake of deceiving the public.    I felt very upset.

On November 27, 1990, Robert D. Stephens, Ph.D., Chief, Hazardous Materials Laboratory (HML), held a meeting with Mark Brown and me to discuss the issue.    Dr. Stephens accused me of **"scientific character assassination."** I had wished that the issue would be resolved within HML, but the accusation forced me to bring the matter up to Dr. Collins who oversaw the DHS Policy on Scientific Misconduct.

Dr. Collins delegated the investigation to Michael G. Volz, Ph.D., Chief, Division of Laboratories.  Dr. Volz chose to conduct the investigation by interviewing three laboratory chiefs, one of whom declined to comment and another professed lack of expertise.  By the interviews, Dr. Volz claimed to have **exonerated** Mark Brown. Earlier when Dr. Volz started the investigation, he also personally ordered me to **return my laboratory keys**, and imposed **restrictions on my hours of access** to the building.

Concurrent with Dr. Volz's investigation was an independent investigation by the U. S. EPA whose project officer had been concerned about the quality of Mark Brown's data and Mark's claims. By inspecting the computer tapes on our mass spectrometric data, U. S. EPA determined, as stated in a letter dated FEB -5 1992 to Dr. Volz, that U. S. EPA was unable to reproduce, from the raw data, the mass spectra Mark Brown had presented in professional

1

conferences.  U. S. EPA's findings and concerns were **entirely in agreement with mine,** and were directly opposite to the conclusions of Dr. Volz who did not examine the raw laboratory data.

After the November 27, 1990 meeting with Dr. Stephens and me, Mark Brown began issuing me lengthy memos, several a week, making various **false charges.**  I brought the ridiculous nature of the memos to the attention of Dr. Stephens.  Dr. Stephens agreed that Mark Brown was being excessive.  In a subsequent Administrative Hearing, however, Dr. Stephens, while under oath to tell nothing but the truth, described my discussions with him about Mark Brown's excesses as Dr. Stephens' counseling of me (on my "wrongdoing," so-to-speak).  Dr. Stephens had <u>not</u> given me such "counsel".

Within about six months after I filed the complaint about scientific misconduct, Dr. Stephens had located a **"Fellowship"** for Mark Brown at the U. S. EPA in Washington, DC.  About four months after Mark left, on the basis of Mark's lengthy false documentation, Dr. Stephens handed me this <u>31-DAY SUSPENSION</u>.  Dr. Stephens told me that he personally initiated this action.

After this action, HML has never given me a promotion, regardless of the continuing superior quality of my work un-surpassed by anyone else in the Lab.

Under penalty of perjury, I affirm that the above is true to the best of my knowledge, information and belief.

Dated: August 17, 2001

John Hsu

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year)

AUGUST 17, 2001

CHERILYN D. GIBSON, NOTARY PUBLIC—



CHERILYN D. GIBSON
Commission # 1268563
Notary Public - California
Alameda County
My Comm. Expires May 27, 2004

2

# Earlier EEOC Charges of Discrimination

## CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | 370A10070 |

CA DEPT FAIR EMPLOYMENT & HOUSING _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Mr. John Hsu | (510) 841-5992 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| Po Box 1255, Berkeley, CA 94701 | | 03/02/1943 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| CA Department Of Substance Control | Cat D (501 +) | (916) 322-0504 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| Po Box 806, Sacramento, CA 95812 | | 067 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify)* | EARLIEST          LATEST<br><br>                      08/31/2000<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I was hired by Respondent on July 31, 1979 as a Public Health Chemist I. My current position is Public Health Chemist III.

From on or about 1998 to the present, I have been continuously harassed by Chief, Bart Simmons and Assistant Chief, Tom Li. On or about July 19, 2000, I took an examination for Environmental Biochemisty and was informed on August 19, 2000 that I had ranked 4th on the list of eligible applicants. On August 23, 2000, I appeal the results of my exam to the State Personnel Board. On August 31, 2000, I received a negative performance appraisal while non-Asians who are less qualified than myself have received positive performance appraisals.

I have complained to Respondent who has done nothing.

I believe that I have been discriminated against because of my race, Asia

# RECEIVED

OCT 27 2000

EEOC-SFDO

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Month, day and year) |
| Date 10/27/00    *Charging Party (Signature)* | |

DC FORM 5 (Rev. 07/99)

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA  ☒ EEOC | 370A11017 |

CA DEPT FAIR EMPLOYMENT & HOUSING _____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. John Hsu | (510) 841-5992 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| P.O. Box 1255, Berkeley, CA 94701 | | 03/02/1943 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| CA Dept. Of Health Services | Cat D (501 +) | (510) 540-2214 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2151 Berkeley Way, Room 501, Berkeley, CA 94701 | | 001 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify) | EARLIEST       LATEST       06/10/2001  ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I began working for Respondent on July 31, 1979. My current position is Public Health Chemist III. I filed a charge of discrimination with the EEOC (Charge No. 370A10070) on October 27, 2000, against the Department of Toxic Substances Control, and with the Department of Health Services on November 15, 2000. In March 2001, when the Department of Health Services found no basis for my complaint, I appealed to the EEOC. On April 27, 2001, Lt. Santos, a security guard, accused me of not wearing my badge. On June 10, 2001, Santos informed me that I was not allowed onto work premises during non-work hours. However, I noticed that similarly situated employees were allowed access to the work premises during non-work hours.

The reason given to me by Respondent for denying me access to my work premises during non-work hours was that I violated its building security policy on previous occasions.

I believe I have been retaliated against for engaging in protected activities.

**RECEIVED**

AUG 03 2001

EEOC-SFDO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 8/3/01  Date    *Charging Party (Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  (Month, day and year) |

EOC FORM 5 (Rev. 07/99)

CHARGING PARTY COPY

CHARGE  F DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☐ FEPA
☒ EEOC

370-A1-1075

CA DEPT FAIR EMPLOYMENT & HOUSING _____ and EEOC
State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. John Hsu | (510) 841-5992 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| P O Box 1255, Berkeley, CA 94701 | | 03/02/1943 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| CA Dept Of Toxic Substance Control | Cat D (501 +) | (510) 540-2214 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2151 Berkeley Way, Room 501, Berkeley, CA 94704 | | 001 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)):

☐ RACE    ☐ COLOR    ☐ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN
☒ RETALIATION    ☐ AGE    ☐ DISABILITY    ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST                LATEST
                        08/02/2001

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

On October 27, 2000, I filed EEOC charge 370A10070 against Respondent. On June 8, 2001, my supervisor, Bart Simmons, gave me such a heavy workload that I was unable to prepare for an EEOC meeting regarding my charge. From July 11, 2001 to July 20, 2001, an Environmental Biochemist position was opened and closed while the management knew that I would be on vacation. On August 2, 2001, I was advised that I would not be promoted to a Research Scientist II position.

In addition, since my original filing with EEOC on October 27, I have been bypassed for three Environmental Biochemist positions.

Respondent gave no reason for this disparate treatment.

I believe I have been discriminated against in retaliation for engaging in protected activity.

RECEIVED

AUG 20 2001

EEOC-SFDO

| want this charge filed with both the EEOC and the State or cal Agency, if any. I will advise the agencies if I change my iress or telephone number and cooperate fully with them in the cessing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| declare under penalty of perjury that the foregoing is true i correct. | SIGNATURE OF COMPLAINANT |
| 8/20/2001      *[signature]* Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |

FORM 5 (Rev. 07/99)

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | ☐ FEPA<br>☒ EEOC | 376A300024 |

| CA DEPT FAIR EMPLOYMENT & HOUSING | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME (Indicate Mr., Ms., Mrs.) | | HOME TELEPHONE (Include Area Code) |
|---|---|---|
| Dr. John Hsu | | (510) 841-5992 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
| Post Office Box 1255, Berkeley, CA 94701 | | 03/02/1943 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| CA Dept Of Toxic Substances Control | Cat D (501 +) | (510) 540-2214 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 2151 Berkeley Way, Room 515, Berkeley, CA 94704 | | 001 |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | EARLIEST          LATEST |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☒ OTHER (Specify) Hostile work environment | 11/07/2001    09/20/2002<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I was hired in 1979 and am now a Public Health Chemist III. On 10/27/00 and 8/20/01, I filed EEOC Charge Nos. 370-A1-0070 and 370-A1-1075, respectively, against Respondent. Beginning on or about 11/07/01, my supervisor, Bart Simmons, Chief, Hazardous Materials Laboratory, has engaged in a continuing series of actions designed to intimidate me.

The actions include adverse performance evaluations, warning memoranda, accusations of violations of various rules and state laws, threat of a negative work assignment, removal of my computer, deletion of computer files, and work assignments impossible to complete in the specified times.

I believe I am being retaliated against for engaging in protected activity.

**RECEIVED**

**OCT 16 2002**

**EEOC-OLO**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| ✗<br>Date  10/01/2002          X _John Hsu_<br>Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |

EEOC FORM 5 (Rev. 07/99)

# 8/25/03 Settlement

Ex. 8

1  BILL LOCKYER, Attorney General    RECEIVED        FILED
   of the State of California
2  MIGUEL A. NERI                 03 SEP 16 PM 3: 15   SEP 2 2 2003
   FIEL D. TIGNO
3    Supervising Deputy Attorneys General RICHARD W. WIEKING    RICHARD W. WIEKING
   RAYMOND W. HAMILTON          CLERK, U.S. DISTRICT COURT   CLERK, U.S. DISTRICT COURT
4    State Bar No. 061398         NORTHERN DISTRICT OF CALIFORNIA   NORTHERN DISTRICT OF CALIFORNIA
     Deputy Attorney General
5  1515 Clay Street, 20th Floor
   P.O. Box 70550
6  Oakland, California 94612-0550
   Telephone: (510) 622-2223
7  Facsimile: (510) 622-2121

8  Attorneys for Defendant
   Department of Toxic Substances Control
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13  JOHN HSU,                        Case No. C 01-4216 MHP (JCS)

14                      Plaintiff,   STIPULATED DISMISSAL

15          v.

16  DEPARTMENT OF TOXIC SUBSTANCES
    CONTROL, and DOES 1-10,
17

18                      Defendants.

19

20  JOHN HSU,                        Case No. C 02-2420 MPH (JCS)

21                      Plaintiff,

22          v.

23  DEPARTMENT OF TOXIC SUBSTANCES
    CONTROL, et al.
24

25                      Defendants.

26          IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto, by

27  counsel for defendant California Department of Toxic Substances Control ("DTSC") and plaintiff

28  John Hsu ("Hsu"), that the actions entitled *Hsu v. Department of Toxic Substances Control, et al.*,

                                    1.

STIPULATED DISMISSAL                          Case No. C 01-4216

                                    001504

1 Case No. C 01- 4216 MPH, and *Hsu* v. *Department of Toxic Substances Control*, Case No. C 02-

2 2420 MHP, shall be dismissed forthwith in their entirety, and with prejudice, in accordance with

3 the terms of the settlement of these actions on August 25, 2003.

4      Attached hereto as Exhibit A is a copy of Hsu's Individual Development Plan, dated

5 January 29, 2003, which is referred to as Court's Exhibit A in the transcript of the August 25,

6 2003 settlement proceedings. A copy of the settlement proceedings is also attached hereto as

7 Exhibit B. Both Exhibits A and B are fully incorporated herein by reference.

8

9 Dated: September 15, 2003

10                                       JOHN HSU
                                      Plaintiff

11

12 Dated: September 16, 2003         BILL LOCKYER, Attorney General
                             of the State of California

13                            MIGUEL A. NERI
                           FIEL D. TIGNO

14                            Supervising Deputy Attorneys General

15

16         By:   Raymond W. Hamilton
                  RAYMOND W. HAMILTON

17                   Deputy Attorney General

18                   Attorneys for Defendant
                  Department of Toxic Substances Control

19

20

21 IT IS SO ORDERED

22

23 U.S. DISTRICT JUDGE

24

25

26

27

28

2.

STATE OF CALIFORNIA

COURT'S EXHIBIT A

**INDIVIDUAL DEVELOPMENT A[illegible]**
FOR FUTURE JOB PERFORMANCE OF PERMANENT EMPLOYEES

STD. 637 (REV. 7-94)

| EMPLOYEE NAME (Last, First, Middle Initial) | DATE OF THIS PERFORMANCE DISCUSSION | |
|---|---|---|
| Esu, John | 1/29/03 | |
| CIVIL SERVICE TITLE | POSITION NUMBER | LAST PERFORMANCE DISCUSSION DATE |
| Public Health Chemist III (Specialist) | | |
| STATE DEPARTMENT NAME | DEPARTMENT SUBDIVISION | EMPLOYEE'S HEADQUARTERS |
| Department of Toxic Substances Control | SPPTP, HML | |

**PERFORMANCE OBJECTIVES**—Goals for further improvements in job performance during the next year in order to meet or exceed standards for the employee's present job or to develop employee skills

**PLANS FOR ACHIEVING OBJECTIVES**—Specific methods by which the employee can work toward accomplishing his or her performance objectives (in-service training courses, college courses, rotation, special work assignments for training purposes, etc.).

GUIDING PRINCIPLES

Cal EPA & DTSC Core Value: Professionalism, Integrity, Objectivity, Innovation, Leadership, Accountability, . . .

Basis of DTSC's Decision-making: Science, Law, Common Sense

CURRENT PROFESSIONAL QUALIFICATION

Eligible for appointment to Research Scientist IV (as of 1/1/03)

CURRENT CAREER DEVELOPMENT GOAL

Function as a Research Scientist Manager (– position description and qualification attached).

SPECIFIC IMMEDIATE OBJECTIVES AND PLAN

| Objective | Plan |
|---|---|
| Keep up with science. | Study current scientific literature.<br>Attend professional conferences & training.<br>Maintain expertise in areas of specialization.<br>Interact with professionals elsewhere. |
| Develop laboratory capability. | Identify analytical needs.<br>Assist laboratory personnel and enhance laboratory morale.<br>Review methodology.<br>Participate in project design.<br>Make recommendations. |
| Get involved in necessary administrative functions. | Attend meetings with staff from other units, programs, agencies, to discuss methods, issues, and implementation.<br>Familiarize with budgeting and planning procedures.<br>Attend supervisory & managerial trainings. |
| Support DTSC functions. | Respond to DTSC inquiries.<br>Analyze issues from first principles.<br>Prioritize.<br>Serve as technical/scientific consultant to HML Chief.<br>Direct and lead research projects. |
| Enhance government credibility. | Continue to advocate for adherence to well-accepted principles of justice, laws, guidelines, and regulations.<br>Ask for equal treatment, fairness in compensation, and in recognition.<br>Listen actively, to discover and address hidden agenda.<br>Persist in aiming for positive, constructive solutions to all problems. |

*I HAVE PARTICIPATED IN A DISCUSSION OF OVER-ALL JOB PERFORMANCE*

| EMPLOYEE'S SIGNATURE | DATE SIGNED | SUPERVISOR'S SIGNATURE | DATE SIGNED |
|---|---|---|---|
| Employee refused to sign | | [signature] | 1/29/03 |

I object to the Performance Appraisal because it is unfair and inaccurate, and because Bart refused to consider the need in actual research process and the totality of [illegible] . John H[illegible] 1/29/03

(Over)

98 16360

001506

PAGES 1 - 8

UNITED STATES DISTRICT COURT



NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE JUDGE

```
JOHN HSU,                        )
                                 )
          PLAINTIFF,             )        NO. C 01-4216 MHP (JCS)
                                 )
  VS.                            )        NO. C 02-2420 MHP (JCS)
                                 )
DEPARTMENT OF TOXIC              )        MONDAY, AUGUST 25, 2003
SUBSTANCES CONTROL, ET AL.,      )
                                 )        SAN FRANCISCO, CALIFORNIA
          DEFENDANT.             )
─────────────────────────────────)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

```
FOR PLAINTIFF:            MINAMI, LEW & TAMAKI
                          360 POST STREET, 8TH FLOOR
                          SAN FRANCISCO, CALIFORNIA  94108-4903
                     BY:  JACK W. LEE, ESQUIRE


FOR DEFENDANTS:           STATE OF CALIFORNIA
                          DEPARTMENT OF JUSTICE
                          ATTORNEY GENERAL'S OFFICE
                          1515 CLAY STREET
                          OAKLAND, CALIFORNIA  94612
                     BY:  RAYMOND W. HAMILTON,
                          DEPUTY ATTORNEY GENERAL

                          NANCY MARKOFF, DTSC SR. STAFF COUNSEL



REPORTED BY:              DIANE E. SKILLMAN, CSR 4909
                          OFFICIAL COURT REPORTER
```

2

1    <u>MONDAY, AUGUST 25, 2003</u>                              12:15 P.M.

2

3            THE CLERK:  CALLING CASE C-01-4216 JOHN HSU VERSUS

4    DEPARTMENT OF TOXIC SUBSTANCES CONTROL AND CASE C-02-2420 JOHN

5    HSU VERSUS DEPARTMENT OF TOXIC SUBSTANCES CONTROL.

6            COUNSEL, PLEASE STATE YOUR APPEARANCES.

7            MR. LEE:  JACK LEE FOR THE PLAINTIFF JOHN HSU.

8            MR. HAMILTON:  RAYMOND HAMILTON ON BEHALF OF THE

9    DEPARTMENT OF TOXIC SUBSTANCES CONTROL.

10           THE COURT:  OKAY.  THANK YOU EVERYONE.

11           WE ARE HERE TO PUT A SETTLEMENT ON THE RECORD THAT

12   HAS BEEN NEGOTIATED OFF THE RECORD.  AND BEFORE I DO, I WANTED

13   TO MAKE SURE THAT I EXTEND THE COURT'S THANKS TO ALL COUNSEL

14   AND TO ALL OF THE PARTIES FOR THEIR PATIENCE AND THE EFFORTS

15   THEY DID PUT INTO THE SETTLEMENT PROCESS.  THE COURT IS VERY

16   APPRECIATIVE.

17           WHAT I PROPOSE TO DO IS RECITE WHAT I UNDERSTAND TO

18   BE THE TERMS OF THE SETTLEMENT INTO THE RECORD.  I WILL THEN

19   ASK EACH LAWYER OF RECORD WHETHER OR NOT I HAVE DONE SO

20   ACCURATELY.  THEN I WILL ASK EACH CLIENT, EACH PARTY WHETHER OR

21   NOT THEY AGREE TO THE TERMS OF THE SETTLEMENT.

22           ONCE I HAVE DONE THAT, YOU HAVE A FINAL AND BINDING

23   SETTLEMENT TODAY ENFORCEABLE IN ACCORDANCE WITH ITS TERMS.

24           NOW, AS IS CUSTOMARY, THERE WILL BE AN EFFORT TO

25   NEGOTIATE A FORMAL DOCUMENTATION OF THE SETTLEMENT.  AND AS I

1   HAVE SAID OFF THE RECORD AND I WILL REPEAT ON THE RECORD, IT IS

2   A GOOD IDEA TO DO THAT BECAUSE SOMETIMES THINGS ARE CLEARER IN

3   THOSE DOCUMENTS WHICH MIGHT BE LEFT SLIGHTLY LESS CLEAR ON THE

4   RECORD.

5           NONETHELESS, IF FOR ANY REASON OR NO REASON YOU FAIL

6   IN THAT EFFORT, YOU STILL HAVE A FINAL BINDING DEAL HERE TODAY.

7           FIRST, CAN I ASK, WHO IS GOING TO BE THE CLIENT

8   REPRESENTATIVE?

9           MS. MARKOFF:  I AM.  MY NAME IS JOAN MARKOFF.  I'M

10  SENIOR STAFF COUNSEL WITH THE DEPARTMENT OF TOXICS.

11          THE COURT:  MS. MARKOFF, DO YOU HAVE AUTHORITY TO

12  ENTER INTO A BINDING SETTLEMENT AGREEMENT ON BEHALF OF ALL THE

13  DEFENDANTS IN THESE CASES HERE TODAY?

14          MS. MARKOFF:  I DO.

15          THE COURT:  THANK YOU VERY MUCH.

16          ALL RIGHT.  THE SETTLEMENT IS AS FOLLOWS:

17          PLAINTIFF WILL BE ASSIGNED A NEW SUPERVISOR RIGHT

18  AWAY.  THAT SUPERVISOR'S NAME IS TOM LI.

19          SECOND, PLAINTIFF WILL REMAIN IN THE BERKELEY

20  LOCATION.  AND IF THAT LABORATORY RELOCATES TO A SITE IN THE

21  EAST BAY, HE WILL BE ASSIGNED TO THAT EAST BAY SITE.

22          PLAINTIFF'S CURRENT POSITION WILL NOT BE IMPACTED BY

23  THE LAYOFFS OF DTSC PERSONNEL.

24          DTSC WILL REMOVE ALL NEGATIVE PERFORMANCE APPRAISALS

25  AND PROBATION REPORTS, THE SPECIFIC IDENTIFIED DOCUMENTS TO BE

4

1    IDENTIFIED BY MR. HSU, FROM HIS PERSONNEL FILE.  THE SELECTED

2    DOCUMENTS WILL BE PLACED IN A SEALED CONFIDENTIAL FILE TO BE

3    RETAINED BY THE LEGAL COUNSEL'S OFFICE AND WILL ONLY BE

4    UTILIZED, NUMBER 1, IN THE EVENT OF LITIGATION, OR, TWO, IN THE

5    EVENT THAT THEY ARE NEEDED FOR CORRECTIVE OR ADVERSE ACTION TO

6    ESTABLISH PRIOR NOTICE.  PLAINTIFF WILL BE GIVEN AN OPPORTUNITY

7    TO SEE THE -- HIS PERSONNEL FILE TO CONFIRM THAT THE DOCUMENTS

8    HAVE BEEN REMOVED.

9            NEXT, THE DTSC WILL DESIGNATE MR. BURK ANGEL AS AN

10   OMBUDSMAN TO RECEIVE AND RESPOND TO MR. HSU'S COMPLAINTS AND

11   CONCERNS IN THE FUTURE.

12           IF, IN THE FUTURE, MR. HSU INTERVIEWS FOR A

13   PROMOTION AND IS UNSUCCESSFUL IN THE INTERVIEW, UPON HIS

14   REQUEST TO A PANEL MEMBER, THE DTSC WILL PROVIDE MR. HSU WITH

15   FEEDBACK ON HIS INTERVIEW AND HOW HE COULD IMPROVE THAT

16   PERFORMANCE IN THE FUTURE.

17           NEXT, DTSC WILL ACTIVELY -- WILL CONTINUE TO

18   UNIFORMLY AND ACTIVELY ENFORCE ANTIDISCRIMINATION,

19   ANTIHARASSMENT AND ANTIRETALIATION LAWS AND POLICIES.

20           NEXT, DTSC WILL GIVE MR. HSU $1,500.

21           NEXT, WITH RESPECT TO THE POSITIONS OF RESEARCH

22   SCIENTISTS II, III AND IV, AND ENVIRONMENTAL BIOCHEMISTS IN THE

23   DEPARTMENT, DEFENDANT WILL NOTIFY MR. HSU OF ANY OPENINGS IN

24   THOSE POSITIONS WHEN THEY OCCUR AND WILL CONSIDER THE

25   PLAINTIFF'S APPLICATION FOR ANY POSITIONS IN COMPLIANCE WITH

5

1  THE LAW, AND WILL NOT CONSIDER ANY ILLEGAL FACTORS, SUCH AS

2  PLAINTIFF'S RACE OR HIS PRIOR EEO ACTIVITIES.

3          I AM ASKING MY COURTROOM DEPUTY TO MARK AS EXHIBIT A

4  TO SETTLEMENT CONFERENCE AN INDIVIDUAL DEVELOPMENT PLAN FOR

5  MR. JOHN HSU DATED JANUARY 29TH, 2003.

6          THE PLAINTIFF WILL MAKE GOOD FAITH EFFORTS TO

7  IMPLEMENT THE INDIVIDUAL DEVELOPMENT PLAN THAT WE HAVE ATTACHED

8  AS AN EXHIBIT TO THESE PROCEEDINGS AND THE DEFENDANTS WILL MAKE

9  GOOD FAITH EFFORTS TO ASSIST THE PLAINTIFF IN HIS

10 IMPLEMENTATION OF THE DEVELOPMENT PLAN.

11         THIS CASE WILL BE DISMISSED IN ITS ENTIRETY WITH

12 PREJUDICE.  ALL OTHER CASES BROUGHT BY THE PLAINTIFF, WHETHER

13 IN STATE OR FEDERAL COURT, AGAINST ANY OF THE DEFENDANTS IN

14 THESE CASES, OR ANY OF THE EMPLOYEES OF THE DEPARTMENT OF TOXIC

15 SUBSTANCES CONTROL AND AGAINST ANY OF THE CO-DEFENDANTS IN ANY

16 CASES, ANY OF THESE CASES, MEANING THAT -- LET ME DO THAT

17 AGAIN.

18         IN ADDITION TO THE INSTANT CASE, THE FOLLOWING CASES

19 WILL BE DISMISSED:

20         ALL CASES IN STATE OR FEDERAL COURT BROUGHT BY THE

21 PLAINTIFF AGAINST THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL,

22 ANY EMPLOYEES OF THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL, OR

23 ARISING OUT OF ANY EVENTS OCCURRING UP THROUGH TODAY ARISING

24 OUT OF PLAINTIFF'S EMPLOYMENT BY THE DEPARTMENT OF TOXIC

25 SUBSTANCES CONTROL.

6

1          ALL OF THOSE CASES WILL BE DISMISSED IN THEIR

2    ENTIRETY WITH PREJUDICE, MEANING ALL DEFENDANTS WILL BE

3    DISMISSED WITH PREJUDICE.  EACH SIDE IN ALL THOSE CASES TO BEAR

4    THEIR OWN ATTORNEY'S FEES AND COSTS.

5          PLAINTIFF RELEASES THE DEFENDANTS IN THIS CASE,

6    THESE CASES GENERALLY.  THAT IS TO SAY, RELEASES ALL CLAIMS,

7    WHETHER KNOWN OR UNKNOWN, ARISING OUT OF ANY FACTS OCCURRING UP

8    THROUGH AND INCLUDING TODAY, AND WAIVES THE PROVISIONS OF THE

9    CALIFORNIA CIVIL CODE SECTION 1542 WHICH WOULD OTHERWISE LIMIT

10   HIS ABILITY TO RELEASE UNKNOWN CLAIMS.

11          OKAY.  I THINK I GOT IT.

12          SO, LET ME START FIRST WITH MR. LEE.  HAVE I

13   ACCURATELY SET FORTH THE TERMS OF THE SETTLEMENT, SIR?

14          MR. LEE:  YOU HAVE, YOUR HONOR.

15          THE COURT:  OKAY.

16          AND IF I COULD ASK YOU, MR. HAMILTON, HAVE I

17   ACCURATELY SET FORTH THE TERMS OF THE SETTLEMENT, SIR?

18          MR. HAMILTON:  I BELIEVE YOU HAVE, YOUR HONOR, BUT

19   IF I COULD JUST GO OVER A COUPLE OF THINGS.

20          IF I UNDERSTAND THE SETTLEMENT CORRECTLY, ALL

21   MR. HSU'S EXISTING STATE AND FEDERAL ACTIONS WILL BE DISMISSED

22   AS WELL AS ANY CO-DEFENDANTS IN THOSE ACTIONS.

23          ADDITIONALLY, MR. HSU IS GIVING US A RELEASE BASED

24   ON ANY CONDUCT OR ANY ACTIONS TAKEN BY DTSC UP THROUGH TODAY'S

25   DATE.

7

```
1                    THE COURT:  THAT'S WHAT I SAID.

2                    MR. HAMILTON:  I BELIEVE THAT'S WHAT YOU SAID, I

3   JUST WANT TO MAKE IT CLEAR IN MY MIND.

4                    THE COURT:  MR. LEE, YOU AGREE WITH THE TERM OF THE

5   SETTLEMENT?

6                    MR. LEE:  YES, YOUR HONOR.

7                    THE COURT:  WITH THAT CLARIFICATION, DO YOU AGREE

8   THAT I HAVE SET IT FORTH ACCURATELY, MR. HAMILTON?

9                    MR. HAMILTON:  YES, I DO, YOUR HONOR.

10                   THE COURT:  ALL RIGHT.

11                   MR. HSU, HAVE YOU HEARD AND UNDERSTOOD THE TERMS OF

12  THE SETTLEMENT HERE TODAY?

13                   PLAINTIFF HSU:  YES, YOUR HONOR.

14                   THE COURT:  DO YOU AGREE TO THE TERMS OF THE

15  SETTLEMENT, SIR?

16                   PLAINTIFF HSU:  YES, YOUR HONOR.

17                   THE COURT:  THANK YOU VERY MUCH.

18                   MS. MARKOFF, HAVE YOU HEARD AND UNDERSTOOD THE TERMS

19  OF THE SETTLEMENT HERE TODAY?

20                   MS. MARKOFF:  I HAVE.

21                   THE COURT:  AND ON BEHALF OF ALL OF THE DEFENDANTS,

22  DO YOU AGREE TO THE TERMS OF THE SETTLEMENT HERE TODAY?

23                   MS. MARKOFF:  I DO.

24                   THE COURT:  THANK YOU VERY MUCH, YOU HAVE A

25  SETTLEMENT.
```

8

1          WE STAND IN RECESS.

2          MR. HAMILTON:   THANK YOU, YOUR HONOR.

3

4

5                    (PROCEEDINGS ADJOURNED.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN  C-01-4216 MHP (JCS) AND C-02-2420 MHP (JCS), HSU V. DEPARTMENT OF TOXIC SUBSTANCES CONTROL, ET AL., PAGES NUMBERED 1 THROUGH 8, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AT THE TIME OF FILING.

THE INTEGRITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON REMOVAL FROM THE COURT FILE.

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

001515

# 2005-2007 EEOC Charges of Discrimination

# and

# Notices of Suit Rights

EEOC CHARGE # : -2005-00801
CHARGING PARTY: HSU, John
RESPONDENT: CA Dept of Toxic Substances Control

## Statement of Particulars

I hold a Ph.D. in Chemistry. I was hired in 1979 by the State of California and am now a Staff Chemist. On October 27, 2000, August 20, 2001, and October 16, 2002, I filed EEOC Charge Nos. 370A10070, 370A11075, and 376A300024, respectively, against Respondent, on the basis of racial discrimination, harassment, retaliation, and hostile work environment.

On August 25, 2003, the parties reached a settlement agreement in the U. S. District Court with the intent to put the past aside, to have a fresh start, and not to make a decision on the merit on matters arising from any events that occurred by the date of the settlement (August 25, 2003). The settlement agreement calls for that I make good faith efforts to implement the Individual Development Plan (IDP) that the court had marked as "Court's Exhibit A," and that the Respondent make good faith efforts to assist me in my implementation of the IDP.

Just two days later, however, Respondent began undermining the settlement agreement by intending to have the then Hazardous Materials Laboratory (HML) Chief Bart Simmons issue me a new IDP.

On October 8, 2003, in violation of the August 25, 2003 settlement agreement to which the California Department of Personnel Administration (DPA) had joined through a stipulated dismissal, DPA still issued a final decision on the merit in my statutory appeal of performance appraisal arising from events that occurred before August 25, 2003. Yet, Respondent's legal counsel Joan Markoff supported DPA, thus forcing me into litigation again (for which the California Court of Appeal decided in my favor on April 13, 2005), taking more of my time from professional development.

In November 2003, Respondent's Deputy Director Jeff Wong demanded that I delete about half of the content of a scientific paper I had prepared. This would in essence ruin the paper.

When HML moved to a new location in March 2004, Respondent assigned me an inadequate and the smallest work space in comparison with all other chemists' work spaces.

In April 2004, Respondent asked me to give a technical presentation at Respondent's open house, scheduled it to coincide with a job-required training which I had to attend, but did not tell me about the scheduled time despite my prior inquiry about it, and later accused me of absence without leave (AWOL). My "not showing up for the presentation" made me a laughter of the Department.

In November 2004, my then immediate supervisor Thomas Li, HML Assistant Chief, agreed to continue to use the IDP in the "Court's Exhibit A" as my current IDP. In December 2004, however, Respondent's legal counsel Joan Markoff claimed that the "Court's Exhibit A" in the 8/25/03 settlement agreement was good only for one year and had thus expired. She asserted that the federal court judges, the Honorable Marilyn Hall Patel and the Honorable Joseph Spero, had

3

RECEIVED

JUN 3 0 2005

EEOC - OLO

EEOC CHARGE # 376-2005-00801

erred, thus Respondent did not wish to honor the IDP in the "Court's Exhibit A" anymore.

In November 2004, in connection with my preparation of another scientific paper derived from work assignment, Jeff Wong and Thomas Li issued me inconsistent instructions and conflicting demands, setting me up for blame, which finally came in the form of a formal March 21, 2005 memo signed by Thomas Li under Jeff Wong's direction, apparently timed also to disrupt my preparation for oral argument in the Court of Appeal the following day. The March 21, 2005 memo intentionally misstated facts or omitted key facts, but Respondent has since refused to discuss it with me.

In January 2005, Respondent reassigned me to work for Jamail Garcha, who was specifically rejected as my supervisor during the August 25, 2005 settlement conference. Since then, Jamail Garcha had been torturing and harassing me, for example, by false documentation, by treating me rudely, and by charging me with AWOL despite my extra time spent and my best effort on work assignments to do what was the in the best interest of the state to serve the state.

Jamail Garcha and Thomas Li also denied my requests to attend major professional trainings such as at the American Chemical Society National Meeting in March 2005 to present my paper which had already passed Respondent's review. Thus I had to use my vacation time and pay for my own travel.

Early in May 2005, Jamail Garcha issued me a new Individual Development Plan which was, in essence, an Individual **Diminishment** Plan by comparison with what I had already accomplished professionally.

On or about May 20, 2005, Jeff Wong appointed Bruce La Belle as HML's new Chief. Very soon afterwards in an e-mail to me, Bruce La Belle hinted at future demotion for me.

By not providing the needed trainings while relying on misrepresentation of facts and excessive and unfair criticism by Jamail Garcha, Respondent on June 20, 2005 issued a Notice of Adverse Action, signed by Jeff Wong, served on me on June 22, 2005, to suspend me for ten work days (totaling 15 days) from July 1 to 15, 2005, charging me with "inefficiency; inexcusable neglect of duty; insubordination; willful disobedience; misuse of state property; other failure of good behavior," citing the March 21, 2005 memo and documents dated prior to August 25, 2003, not yet decided on the merit, as evidence of "prior warnings" and "progressive discipline." This is escalated harassment and is apparently not applying the same standard to all staff. This Notice of Action was issued just 10 days after I was interviewed by Nancy Martin, Chief of Respondent's Office of Civil Rights, concerning my complaint of Jamail Garcha's harassment and the resulting hostile work environment.

From January 2005 on, Respondent also denied me several more promotions or opportunities for career advancement. Respondent refused me entry into the Hazardous Materials Laboratory Chief exam, claiming not to have received my application, even though I had made timely

4

**RECEIVED**

JUN 3 0 2005

EEOC - OLO

EEOC CHARGE # 376-2005-00801

inquiry. Respondent also deselected me for the positions of Senior Hazardous Substances Scientist and Research Scientist II (Chemical Sciences), and provided negative job references to prospective employers.

For the Research Scientist II (RS II) position, while I was generally considered the most qualified candidate by HML staff, Respondent defeated the State's merit system in civil service by pre-selecting a candidate with only a Bachelor's degree not even on the eligibility list, providing him with considerable training opportunities (from which I was entirely excluded) and various privileged information and advantages, etc. In selecting the candidate, the job interview, with the new HML Chief Bruce La Belle (picked by Jeff Wong) serving as the chair of the panel, appeared only ceremonial and appeared staged and orchestrated again by Jeff Wong. Subsequently, Bruce La Belle characterized the promotion of the selected candidate as "lateral transfer," apparently to get around the fact that the selected candidate was not even on the eligibility list. When I asked La Belle how I could have performed better in the job interview, La Belle was unable to suggest any improvement.

I feel that Respondent has continued to be hostile to me. The U. S. Supreme Court has held in *National Railroad Passengers Co. v. Morgan* that hostile work environment consists of a sequence of events that may span a time period of years. In light of this decision, Respondent's various hostile actions to me from the past to the present are inseparable and constitute one single unlawful employment practice.

I believe I have been retaliated against for engaging in protected activities.

### Request

I want this charge filed with both the EEOC and the California Department of Fair Employment and Housing. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

### Declaration

I declare under penalty of perjury that the foregoing is true and correct.

Date: June 27, 2005

**RECEIVED**

JUN 30 2005

EEOC - OLO

*John Hsu*
_____
John Hsu
Charging Party

5

COURTS EXHIBIT A

INDIVIDUAL DEVELOPMENT PLAN
FOR FUTURE JOB PERFORMANCE OF PERMANENT EMPLOYEES

STD. 637 (REV. 7-94)

EEOC CHARGE # 376-2005-00901

| EMPLOYEE NAME (Last, First, Middle Initial) | DATE OF THIS PERFORMANCE DISCUSSION |
|---|---|
| Esu, John | 1/29/03 |

| CIVIL SERVICE TITLE | POSITION NUMBER | LAST PERFORMANCE DISCUSSION DATE |
|---|---|---|
| Public Health Chemist III (Specialist) | | |

| STATE DEPARTMENT NAME | DEPARTMENT SUBDIVISION | EMPLOYEE'S HEADQUARTERS |
|---|---|---|
| Department of Toxic Substances Control | SPPTP, EML | |

| PERFORMANCE OBJECTIVES—Goals for further improvements in job performance during the next year in order to meet or exceed standards for the employee's present job or to develop employee skills | PLANS FOR ACHIEVING OBJECTIVES—Specific methods by which the employee can work toward accomplishing his or her performance objectives (in-service training courses, college courses, rotation, special work assignments for training purposes, etc.). |
|---|---|

GUIDING PRINCIPLES

Cal EPA & DTSC Core Value:  Professionalism, Integrity, Objectivity, Innovation, Leadership, Accountability, . . . .

Basis of DTSC's Decision-making:  Science, Law, Common Sense

**RECEIVED**

**JUN 30 2005**

**EEOC - OLO**

CURRENT PROFESSIONAL QUALIFICATION

Eligible for appointment to Research Scientist IV. (as of 1/1/03).

CURRENT CAREER DEVELOPMENT GOAL

Function as a Research Scientist Manager (– position description and qualification attached).

SPECIFIC IMMEDIATE OBJECTIVES AND PLAN.

| | |
|---|---|
| Keep up with science. | Study current scientific literature. Attend professional conferences & training. Maintain expertise in areas of specialization. Interact with professionals elsewhere. |
| Develop laboratory capability. | Identify analytical needs. Assist laboratory personnel and enhance laboratory morale. Review methodology. Participate in project design. Make recommendations. |
| Get involved in necessary administrative functions. | Attend meetings with staff from other units, programs, agencies, to discuss methods, issues, and implementation. Familiarize with budgeting and planning procedures. Attend supervisory & managerial trainings. |
| Support DTSC functions. | Respond to DTSC inquiries. Analyze issues from first principles. Prioritize. Serve as technical/scientific consultant to HML Chief. Direct and lead research projects. |
| Enhance government credibility. | Continue to advocate for adherence to well-accepted principles of justice, laws, guidelines, and regulations. Ask for equal treatment, fairness in compensation, and in recognition. Listen actively, to discover and address hidden agenda. Persist in aiming for positive, constructive solutions to all problems. |

I HAVE PARTICIPATED IN A DISCUSSION OF OVER-ALL JOB PERFORMANCE

| EMPLOYEE'S SIGNATURE | DATE SIGNED | SUPERVISOR'S SIGNATURE | DATE SIGNED |
|---|---|---|---|
| Employee refused to sign | | | 1/29/03 |

I object to the Performance Appraisal because it is unfair and inaccurate, and because Rao refused to consider the need in actual research process and the totality of circumstances. ...

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA ☒ EEOC | 555-2006-00301 |

| CA DEPT FAIR EMPLOYMENT & HOUSING | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* | |
|---|---|---|
| Dr. John Hsu | (510) 841-5992 | |
| STREET ADDRESS        CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
| Post Office Box 1255, Berkeley, CA 94701 | | 03/02/1943 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| CA Dept Of Toxic Substances Control | Cat D (501 +) | (510) 540-3003 |
| STREET ADDRESS       CITY, STATE AND ZIP CODE | | COUNTY |
| 700 Heinz Street, Berkeley, CA 94710 | | 001 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |
| STREET ADDRESS       CITY, STATE AND ZIP CODE | COUNTY |
| | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | EARLIEST        LATEST |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☒ OTHER *(Specify)* Hostile harassment  work environment | 1/19/06 |
| | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I was hired in 1979 and am now a Staff Chemist. On 10/27/00, 8/20/01 and 10/1/02, I filed with EEOC Charges of Discrimination (EEOC Charge Nos. 370-A1-0070, 370-A1-1075 and 376A300024) against Respondent California Department of Toxic Substances Control (DTSC). On 8/25/03, the parties reached a global settlement agreement in the federal court, but immediately afterwards Respondent began to undermine the settlement agreement (as alleged in EEOC Charge No. 376-2005-00801). Since about 11/03, Jeffrey Wong, Deputy Director, working closely with Joan Markoff, Senior Staff Counsel, had selected a team of individuals, including, in particular, Jarnail Garcha, Supervising Chemist, and Bruce La Belle, Chief of the Hazardous Materials Laboratory, to engage in a continuing series of actions designed to intimate me, to set me up for blame, to damage my reputation, and to ruin my professional career, while putting my health and safety at risk.

The actions include heightened scrutiny, attempts to destroy an important scientific paper I prepared (on the scientific basis of regulatory waste leaching) in 2003), giving conflicting instructions, warning memoranda, characterizing my urging for Respondent to adhere to the Ethical Guidelines of the American Chemical Society for authors as wasting state time and resources on a private matter for private gain (in 2004), accusations of violations of various rules, policies and state laws, reassignment with

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (Wh~~RECEIVED~~State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to ~~FEB 28 2006~~ knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT **EEOC-OLO** |
| 2/13/06          *John Hsu* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Date          Charging Party *(signature)* | |

EEOC FORM 5 (Rev. 07/99)

EEOC CHARGE # 555-2006-00301
CHARGING PARTY: Hsu
RESPONDENT: Dept of Toxic
Substances Control

significantly different and lower responsibilities, denial of training required for safe and proficient operation of laboratory instruments (for the completion of work assignments) (in 2005), denial of training request to attend a professional conference and to present a scientific paper (pertaining to mercury pollution - - a matter of statewide, national and global concern), assertion that Respondent had fulfilled its obligations under the 8/25/03 settlement agreement (to implement the provisions in "Court's Exhibit A"), issuance of an Individual Development Plan which was in effect an Individual DIMINISHMENT Plan, excessive criticism, sustained hostility, failure to promote to Research Scientist II, deliberate misrepresentation of facts, scheming to entrap me, resulting in a 10-working-day suspension, delaying referral to a medical facility for treatment of work-related injury, complaining about my requests for clarification of unclear instructions, accusation of failure to complete work assignments, undeserved negative performance appraisal, refusal to verify the facts independently, denial of request for lateral transfer (to work in a more humane and professional work environment), and a 20-working-day suspension (in 2006).

In contrast, while Wong, Garcha and La Belle (promoted by Wong) vehemently attacked my job performance, Wong and La Belle had nothing but praise and special privileges for the Mobile Laboratory team members hand-picked by Wong, such as by providing them with extensive training opportunities, by promoting a chemist with only a Bachelor's degree and limited research experience over four Ph.D.'s to the position of Research Scientist II, by asserting to higher management and the press that the Mobile Laboratory was ready for emergency response (in 9/05) even though the two primary analytical instruments in the Mobile Laboratory were not even up and running, by supporting Garcha's release of (x-ray fluorescence) analytical results even though proper calibration standards had not been used in obtaining the results, and by refusing to apply uniformly the same job performance criteria and disciplinary standards to all.

Pursuant to the U. S. Supreme Court's definition of "hostile work environment" in *National Railroad Passengers Co. v. Morgan*, 536 U.S. 101, 115 (2002), all the actions over the years are inseparable and together constitute one single "unlawful employment practice."

I have made formal and informal complaints of harassment to Respondent's Office of Civil Rights, but that office omitted key allegations, chose not to interview a primary tortfeasor (Barton Simmons), limited its investigation to narrow time periods (as directed by DTSC Office of Legal Counsel), and decided to investigate only violations of DTSC policies but not violations of the law. By restricting itself to this manner of investigation, Respondent concluded that it "was unable to substantiate the allegations or find a violation of DTSC policy."

I believe that I am being retaliated against for engaging in protected activities.

**RECEIVED**

**FEB 2 8 2006**

**EEOC-OLO**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

AGENCY: ☐ FEPA ☒ EEOC

CHARGE NUMBER: 555-2007-00235

CA DEPT FAIR EMPLOYMENT & HOUSING and EEOC
*State or local Agency, if any*

NAME *(Indicate Mr., Ms., Mrs.)*: Dr. John Hsu

HOME TELEPHONE *(Include Area Code)*: (510) 841-5992

STREET ADDRESS / CITY, STATE AND ZIP CODE: Post Office Box 1255, Berkeley, CA 94701

DATE OF BIRTH:

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| CA Dept Of Toxic Substances Control | Cat D (501 +) | (510) 540-3003 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 700 Heinz Street, | Berkeley, CA 94710 | 001 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☒ OTHER *(Specify)* Hostile work environment

DATE DISCRIMINATION TOOK PLACE
*EARLIEST* *LATEST*
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I hold a Ph.D. in Chemistry, was hired in 1979, and am now a Staff Chemist working in the Environmental Chemistry Laboratory (ECL) of Respondent California Department of Toxic Substances Control (DTSC). On 10/27/00, 8/20/01, 10/1/02, 6/27/05 and 2/13/06, I filed Charges of Discrimination with the U. S. EEOC (EEOC Charge Nos. 370-A1-0070, 370-A1-1075, 376A300024, 376-2005-00801 and 555-2006-00301, respectively) against DTSC. Beginning in 5/05, ECL Chief Bruce La Belle and first-line supervisor Jarnail Garcha, working in concert, have engaged in a continuing series of actions designed to intimidate me or to injure my professional career.

For example, on 11/22/05, Garcha issued me an "Individual Development Plan" which was in effect an "Individual Diminishment Plan." Since then, DTSC has been aggressively carrying out this Individual Diminishment Plan, limiting my job duties to routine and entry-level work assignments. In addition, concurrently, La Belle bombards me with e-mails abundant with unjust accusations, negative comments and ridicule, disrupting my efforts to do my job. Since 6/06, La Belle and Garcha's additional intimidating actions and harassment include heightened scrutiny, incessant criticism, setting unreasonable deadlines for work assignments or imposing deadlines only after the fact, disparate treatment, deliberate misrepresentation of facts, hunting for blame by disregarding pertinent facts, etc.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I declare under penalty of perjury that the foregoing is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

RECEIVED

1/18/07 John Hsu

Date Charging Party *(Signature)*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) JAN 23 2007

EEOC-SFDO

EEOC FORM 5 (Rev. 07/99)

Case 3:08 CHARGE OF DISCRIMINATION Filed 05/22/2008 GE Page 54 of 63 AGE NUMBER

This form is affected by the Privacy Act of 1974; See Privacy Act Statement befo. completing this form.

☐ FEPA
☒ EEOC

555-2007-00235

In 9/06, as in 2/05, DTSC again denied my professional training request to attend the American Chemical Society National Meeting (- this time in San Francisco which is nearby). While testifying in administrative proceedings in 9/06 or 11/06 in my appeals of negative performance appraisal and adverse actions, both La Belle and Garcha gave false testimony while under oath to tell nothing but the truth, and then relied on such false testimony to justify their actions.

In 2006, DTSC also repeatedly passed me up for promotion, and gave negative job references to others to make sure that I would not be promoted. In 6/06 with La Belle on the interview panels, DTSC failed to promote me to either Research Scientist II or III (two openings each) in favor of pre-selected and less qualified candidates such as Garcha who was academically poorly prepared, uncomfortable with scientific ideas, and short on experience in research. Furthermore, after Garcha was promoted to Research Scientist III, Garcha was not doing research but was still doing his old job of a first-line supervisor. In 12/06 (with Myrto Petreas and K. C. Ting being the interview panelists), DTSC again failed to promote me to Research Scientist II (two openings). In 12/06, DTSC even denied my request for lateral transfer to a more professional work environment - even though I ranked the highest in the job interview. The reason is that La Belle, assisted by Human Resources, has blocked the lateral transfer despite the interview panel's positive recommendations.

Concerning La Belle and Garcha's continuing harassment and intimidation, DTSC Deputy Director Jeff Wong commented that he was "satisfied" with the ECL management's actions. About the 12/06 Research Scientist II job interview, Petreas stated that I did not use my time well and did not give complete answers. Yet, when asked about: (1) the unclear instructions given at the interview about the length of the available interview time, (2) other irregularities in the interview process, (3) in what way my answers were incomplete, and (4) why the panel deemed the two selected candidates, lacking experience in operating gas chromatograph/mass spectrometer (GC/MS), to be ready to perform troubleshooting for GC/MS - required for performing the jobs, Myrto was unable to give an answer. Regarding ECL's discrimination, harassment, and apparent disregard of the State's merit system and the irregularities in ECL's job interviews, DTSC Human Resources' Personnel Analyst Lori Harner bounced me to DTSC's office of Civil Rights (OCR), but OCR's Chief Nancy Martin chose not to consider the pertinent facts, thus "unable" to find discrimination.

Under the California and United States Supreme Court decisions in *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812, in *National Railroad Passengers Corp. v. Morgan* (2002) 536 U. S. 101, 115, and in *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, the unlawful employment practice of "hostile work environment" may consist of a series of actions that may occur over a period of years. In the instant case, in light of these court decisions, the past and present hostile actions by the DTSC are inseparable and together constitute a single unlawful employment practice. I believe that I am being retaliated against for engaging in protected activities. [H]

| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
|---|---|
| 1/18/07 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Date    Charging Party *(Signature)* | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 550-2007-02171 |

| California Department Of Fair Employment & Housing | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. John Hsu | (510) 841-5992 | 03-02-1943 |

| Street Address | City, State and ZIP Code |
|---|---|
| P O Box 1255, Berkeley, CA 94701 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CA DEPT OF TOXIC SUBSTANCES CONTROL | Unknown | (916) 322-0504 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1001 "I" Street, Sacramento, CA 95814 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest
                            09-02-2007

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **See attached.**  _See attached._ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

**THE PARTICULARS ARE:**

I hold a Ph.D. in Chemistry.  In 1979, I was hired by California Department of Health Services ("DHS"; now Department of Public Health, effective 7/1/07) as a Public Health Chemist I.  By 1986, I had been promoted to Public Health Chemist III (Specialist).  In 1990 while in DHS' Hazardous Materials Laboratory ("HML"), I made a complaint of scientific misconduct (subsequently verified by the U. S. EPA to be true).  In response, DHS produced detailed false documentation and based on the strength of which imposed on me a 31-day suspension. Since then, I have never been promoted.

In 1993, HML separated administratively from DHS and moved into California Department of Toxic Substances Control ("DTSC").

In 1998, right after DHS decided to settle my portion of an eight-year-old class action overtime lawsuit filed by an employee union, DHS began criticizing me severely, such as accusing me of having made a bomb threat. In 1999, DHS further falsely accused me of "criminal trespassing," demanded that HML limit my building access, while refusing to produce the surveillance videotapes which would have exonerated me.  My computer files then disappeared from my office during the hours I was forbidden to enter the building.  Based on the 1998 and 1999 complaints, HML in 2000 issued me an undeserved negative performance appraisal, forcing me to file a Charge of Discrimination with the U. S. EEOC (Charge No. 370A10070).

Despite the Charge, the hostility continued.  Subsequently, the U. S. EEOC issued six more Charges of Discrimination on my behalf (Charge Nos. 370A11017 against DHS, 370A11075, 376A300024, 376-2005-00801, 555-2006-00301, 555-2007-00235 against DTSC), with the last one issued in 1/07.

On 2/22/07, DTSC served on me termination papers, characterizing the work I had done, among the best, as the worst.  DTSC even forbade me to re-enter the building.  As a result of the dismissal, I had to miss ten or more promotional opportunities since then, such as for the positions of Spectroscopist, Senior Hazardous Substances Scientist, and Research Scientist II, III, and IV.  DHS and DTSC also engaged in irregular activities in the ranking/selection of candidates (ranking me low and qualifying the poorly prepared Jarnail Garcha) for the Research Scientist positions.

I have complained to both DTSC and DHS. DTSC and DHS, however, did nothing.

I believe that I have been retaliated against for my prior participation in protected activities since 1990.

A more detailed Statement of Particulars, my most recent complaints of discrimination filed with DTSC and DHS, and the previous U. S. EEOC Charges of Discrimination are attached.

*JH   9/1-/07*

**Statement of Particulars**

I hold a Ph.D. degree in Physical Chemistry from the University of Illinois. In graduate school, I maintained a grade-point-average of 4.9/5.0. In 1979, I was hired by the California Department of Health Services ("DHS") as a Public Health Chemist I. By 1986, I had been promoted to Public Health Chemist III (Specialist). In 1989 while working in the Hazardous Materials Laboratory ("HML") of DHS, I worked overtime to successfully developed an experimental method interfacing an ion chromatograph with a particle-beam mass spectrometer. But when reporting my findings at the Pittsburgh Conference in 1990, my then supervisor substituted part of my data (mass spectra) with data created by other means to create a false impression of perfection.

Because scientists should report their data faithfully, I expressed my concern regarding scientific misconduct pursuant to a DHS policy (which forbade retaliation). Subsequently, my then supervisor bombarded me with memos (false documentation), on the strength of which HML issued me an adverse action and imposed on me a 31-day suspension. In the meantime, HML found the supervisor a "fellowship" at the U. S. EPA. Since then (1990), despite the high-quality work I continued to produce, including publication of scientific papers in leading scientific journals, I have never been promoted.

In about 1990, the employee union California Association of Professional Scientists filed a class action overtime lawsuit against the State, to which I joined. The federal court ruled in the employee union's favor, but for about eight years, DHS would not settle my portion of the claim, insisting that I had not done overtime work. In 1998, DHS finally agreed to settle, but then immediately began harassing me intensely, complaining that I had made a bomb threat, that I had approached a female security guard (with a strawberry tart) and conducted a campaign of harassment, and that my mother (a retired physician, in a wheelchair) had come to the DHS building to use the (handicap-accessible) bathroom.

In 1999, DHS further accused me of "criminal trespassing" (for allegedly failing to observe the building security policy), called the California Highway Patrol ("CHP"), and interrogated me for an hour. DHS, however, refused to produce the lobby surveillance camera videotape which would have exonerated me, while claiming that DHS had no equipment to view the videotapes. DHS then forbade me to enter the building during off hours, during which my computer files related to the event disappeared from my office. For such security breach occurring on State property, I needed to report the loss to both DHS and CHP. But HML then issued me formal memos forbidding me to contact DHS or CHP. (By then, HML was no longer part of DHS. In 1993, HML had moved administratively from DHS to a new Department, California Department of Toxic Substances Control ("DTSC").)

In 2000, based on the 1998 and 1999 events, HML then issued me a negative performance appraisal, forcing me to file my first Charge of Discrimination with the U. S. EEOC (Charge No. 370A10070). To U. S. EEOC, DTSC (Legal Counsel Joan Markoff wrote that I had "apologized" for making a bomb threat. Since making a bomb threat is such a serious charge, I asked why the State did not come to arrest me. However, Markoff merely evaded the question.

*JH   9/2/07*

1

After 2000, on my behalf, the U. S. EEOC had issued five more Charges of Discrimination to DTSC (for retaliation, harassment, hostile work environment, and continuing violation) (Charge Nos. 370A11075, 376A300024, 376-2005-00801, 555-2006-00301, and 55-2007-00235), with the latest one issued on 1/30/07. To DHS, U. S. EEOC had also issued one (Charge No. 370A11017).

On 2/22/07, among much fanfare, three DTSC managers and supervisors, including Assistant Personnel Officer Jil Harling (traveling down from Sacramento to Berkeley for this event), served on me three volumes of termination papers, asking me to vacate the premise in ten minutes, and asking a CHP Officer and a supervisor from DTSC's Criminal Investigations Branch to escort me out. Bruce La Belle, Chief of the Environmental Chemistry Laboratory ("ECL"; with the lab name changed from HML in 2006), put me immediately on administrative leave till the termination date of 3/2/07. DTSC also immediately blocked my access to Departmental e-mail. Building security and receptions received written notice, with picture from my Photo ID attached, forbidding me to enter the building (– a government facility which should be open to the public). La Belle further instructed all ECL staff to report any phone contact by me, and informed them "not to be afraid." Since then (more than half a year ago), DTSC still has not allowed me back to either inspect work files or pick up my personal belongings.

What the termination papers says, in short, is the following:

> Over the course of the past year, despite having fewer assignments than others, you consistently failed to complete these assignments. You contributed virtually nothing to the laboratory during this period.

The **causes** for the termination, are then:

> Inefficiency; inexcusable neglect of duty, insubordination; willful disobedience, other failure of good behavior; incompetence; and discourteous treatment.

Here DTSC characterizes some of the best work ever done in the lab (– maintaining the ion chromatograph in good working condition; handling unusually large sample loads; suggesting use of a more appropriate analytical technology for meeting the deadline; and preparing thorough laboratory reports consistent with Good Laboratory Practice and U. S. EPA Standard Operating Procedure for Data Review) as the worst DTSC has ever seen.

In arriving at its conclusion, DTSC relied on its usual tactic of conspiracy (years-long between HML supervisor Jarnail Garcha and La Belle), intentional misrepresentation of facts (e.g., by producing data compilations to mislead the judge, and by denying that Garcha had previously given certain specific instructions on how to proceed with a work assignment), setting me up for blame (e.g., by not providing the analytical support needed for meeting the deadline), heightened scrutiny, endless blame, application of previously unannounced standards, and nonuniform application of the evaluation criteria.

Before the dismissal, DTSC had scheduled me to participate in a "Spectroscopist" civil service exam. Shortly

2

$JH$ 9/2/07

before the adverse action, however, DTSC rescheduled the exam to a date after the adverse action. Effective 2/22/07 after 1:15 p.m., DTSC had forbidden me to enter the building. As a result, I could not participate in the "Spectroscopist" exam.

Given the dismissal, for still needing a continuing income, I applied for retirement, effective the day (3/2/07) after I was last on DTSC's payroll (3/1/07). DTSC, however, reported to the State Controller's Office that I had retired on 3/1/07. DTSC then argued to the State Personnel Board ("SPB") that since I had retired (on 3/1/07) before the adverse action had become effective on 3/2/07 at 8:00 a.m., the cause for my separation from civil service was retirement, not dismissal, thus SPB had no jurisdiction to hear my appeal of the dismissal. On that theory, the SPB then informed me that as a retiree, I still could participate in civil service examinations and job interviews. After realizing that, DTSC then asked the SPB to withhold my name from certification for seven civil service classifications, for which I had successfully competed in examinations and were on the eligibility lists. The seven classifications include Research Scientist II, III, & IV, Senior Hazardous Substances Scientist, and Environmental Biochemist. From 3/07 through 8/07, I thus had to miss at least ten opportunities to participate in the job interviews for the Research Scientist II, III, and IV positions in DHS and DTSC.

There are other instances showing DHS and DTSC's irregularity in the selection of employees for promotion. For example, for the Research Scientist IV position, DHS is the entity conducting the exam (a paper qualification review) and producing the eligibility lists. For three consecutive years, I applied. However, despite having produced more research papers, my ranking dropped lower and lower till the bottom, suggesting that there were fraud, discrimination, or some irregularity in the manner DHS conducted the exam. I appealed the exam ranking to the SPB, but SPB stated (in 2007) that for allegation of discrimination, I had to file a discrimination complaint with the DHS first. I thus filed my discrimination complaint with DHS, but DHS would not respond. The low ranking for Research Scientist IV had deprived me many opportunities to even participate in such job interviews.

Another matter pending in 2007 at the SPB was why HML first-line supervisor Jarnail Garcha supervising routine chemical analysis had been qualified to take the Research Scientist III exam. Garcha's primary duty was to give work assignments to chemists for providing routine analytical support. However, Garcha lacks hands-on experience with many of the analytical methods, and is generally uncomfortable with scientific ideas and concepts. While Garcha's name did get tagged on as co-author in several scientific publications, Garcha's roles in the projects were primarily overseeing routine analysis only, rather than research. In addition, while in 2005 DTSC had required confirmation of academic degrees of applicants and successful candidates, in response to my California Public Records Act ("CPRA") requests, DTSC would not reveal whether DTSC had confirmed whether Garcha had indeed graduated from a qualifying institution. Furthermore, Garcha's qualification is so much weaker than many others' (such as John Hsu's), how could HML and DTSC have promoted Garcha to Research Scientist III in 6/06 over so many others? Has DHS ever placed Garcha on the Research Scientist III ranking list? Neither DHS nor DTSC would produce the ranking lists – suggesting disparate treatment, coverup, and efforts to defeat the State's Constitutional merit system in civil service.

In recent years, DTSC had also forced many senior employees to retire, for example, by making unreasonable

3

*JH* 9/12/07

demands and by making significant changes in their work duties (e.g., assigning a senior-level Staff Chemist to perform entry-level duties like sample log-in usually done by a lab assistant). As a result, from 9/05 on, about ten HML staff in Berkeley (out of 41) had retired.

Over the years, in DTSC's adverse actions, DTSC leaned heavily on false documentation. In testifying at hearings of my appeals of undeserved negative performance reports or adverse actions in 2006-2007, Garcha and La Belle also committed perjury freely. In responding to my CPRA requests, DTSC Legal Counsel likewise provided answers known to DTSC to be false, and apparently wanted to escalate the cost to me. While CPRA provides for production of documents electronically, to my requests for a few e-mails, DTSC wanted to charge me $405.00. To my request for training records, DTSC wanted me to pay over $700.00, claiming that DTSC had to compile the information, even though the information already existed in compiled form. Thus, DTSC appears interested in continuing to harass me and to force me into litigation.

In 2007, I have also complained to DTSC Office of Civil Rights about the continuing discriminatory and retaliatory practice at DTSC. That Office, however, also did not respond.

Pursuant to the California and U. S. Supreme Court decisions in *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812, in *National Railroad Passengers Corp. v. Morgan* (2002) 536 U.S, 101, 115, and in *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, the unlawful employment practice of "hostile work environment" may consist of a series of actions that may occur over a period of years. In the instant case, in light of these court decisions, the past and present hostile actions by DHS and DTSC are inseparable and together constitute a single unlawful employment practice.

I believe that I have been retaliated against for engaging in protected activities.

**Request**

I want this Charge filed with both the U. S. EEOC and the California Department of Fair Employment and Housing. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

**Declaration**

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 2, 2007

JOHN HSU, Charging Party

4

EEOC Form 161 (3/98)    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | John Hsu | From: | Oakland Local Office |
|---|---|---|---|
| | Po Box 1255 | | 1301 Clay Street |
| | Berkeley, CA 94701 | | Suite 1170-N |
| | | | Oakland, CA 94612 |

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| | **Julian F. Melendres,** | |
| 555-2007-00235 | **Investigator Support Assistant** | (510) 637-3242 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Michelle L. Nardella,**
**Director**

February 27, 2008
(Date Mailed)

cc:  Delores J. Owens and Nancy Martin
Human Resources/Office of Civil Rights
CA DEPT OF TOXIC SUBSTANCES CONTROL
Post Office Box 806
Sacramento, CA 95812

EEOC Form 161 (3/98)          U.S. **E**QUAL **E**MPLOYMENT **O**PPORTUNITY **C**OMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | John Hsu<br>P O Box 1255<br>Berkeley, CA 94701 | From: | Oakland Local Office<br>1301 Clay Street<br>Suite 1170-N<br>Oakland, CA 94612 |
|---|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is* | | |
|---|---|---|---|
|  | *CONFIDENTIAL (29 CFR §1601.7(a))* | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Julian F. Melendres,** | |
| 555-2006-00301 | **Investigator Support Asst** | (510) 637-3242 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
|  | Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge. |
|  | While reasonable efforts were made to locate you, we were not able to do so. |
|  | You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged. |
| X | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

**Michelle L. Nardella,**
**Director**

*February 21, 2008*
*(Date Mailed)*

cc:    Delores J. Owens and Nancy J. Martin
       Human Resources/Office of Civil Rights
       CA DEPT TOXIC SUBSTANCES CONTROL
       P.O. Box 806
       Sacramento, CA 95812

## DISMISSAL AND NOTICE OF RIGHTS

To:  **John Hsu**
**P O Box 1255**
**Berkeley, CA 94701**

From:  **Oakland Local Office**
**1301 Clay Street**
**Suite 1170-N**
**Oakland, CA 94612**

| | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **376-2005-00801** | **Julian F. Melendres,** **Investigator Support Assistant** | **(510) 637-3242** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Michelle L. Nardella,**
**Director**

*February 27, 2008*
*(Date Mailed)*

Enclosures(s)

cc:  **Delores J. Owens**
**Human Resources**
**CA DEPT TOXIC SUBSTANCES CONTROL**
**P.O. Box 806**
**Sacramento, CA 95812**